HOSPITAL SAN PABLO, INC., peticionario, *v.* HOSPITAL HERMANOS MELÉNDEZ, INC. y SECRETARIO DE SALUD, recurridos.

*Número:* CE-88-494 *Resuelto:* 25 de mayo de 1989

722

*Marta Quiñones Zambrana,* de *Cancio, Nadal & Rivera,* abogada del peticionario; *Porfirio Bonet Cardona,* abogado del Hospital Hermanos Meléndez, Inc., recurrido; *Rafael Ortiz Carrión, Procurador General,* y *Awilda Irizarry Pardo, Procuradora General Auxiliar,* abogados del Secretario de Salud, recurrido.

EL JUEZ ASOCIADO SEÑOR ALONSO ALONSO emitió la opinión del Tribunal.

Nuevamente tenemos ante nos una controversia relacionada con la Ley de Certificados de Necesidad y Conveniencia, Ley Núm. 2 de 7 de noviembre de 1975, según enmendada, 24 L.P.R.A. sec. 334 *et seq.*

Ya en *Ruiz Hernández v. Mahiques,* 120 D.P.R. 80 (1987), tuvimos oportunidad de expresarnos sobre la necesidad de notificar al Secretario de Salud con copia de la solici-

tud de revisión judicial presentada contra sus determinaciones administrativas que conceden o deniegan los certificados de necesidad y conveniencia, y sobre otros extremos.

Establecimos allí el procedimiento y las reglas aplicables a los recursos de revisión judicial, así como la naturaleza de cumplimiento estricto de la referida notificación al Secretario de Salud.

Resolvemos ahora sobre el alcance de la disposición de ley relativa a la *veda* —pre eleccionaria— para la tramitación y/o expedición de dichos certificados.

## I

El *27 de mayo de 1988* el Hospital Hermanos Meléndez, Inc. (en adelante H.H.M.) envió a las oficinas de la Secretaría Auxiliar para Reglamentación y Acreditación de Facilidades de Salud (en adelante Secretaría Auxiliar) una comunicación expresando su interés en presentar una solicitud para operar una unidad de cirugía cardiovascular. A tenor con el Art. IV-1(a) del Reglamento del Departamento de Salud Núm. 56 de 15 de agosto de 1986 (en adelante Reglamento), presentó su solicitud, a esos efectos, *el 31 de mayo de 1988*. Recibidos los documentos, el Departamento de Salud publicó en el periódico *El Mundo de 9 de junio de 1988* el edicto que exige la ley y el reglamento. En el mismo se le brindaba a las partes interesadas información relativa a dicha solicitud y exhortaba al público en general a que se expresara, mediante escrito, sobre la misma.

En adición a la notificación hecha por el referido edicto, mediante carta de 23 de junio de 1988, dicha Secretaría Auxiliar notificó al Hospital San Pablo, Inc. (en adelante el peticionario) la intención del H.H.M. de ofrecer el servicio de cirugía de corazón abierto al operar la unidad cardiovascular propuesta. El 20 de julio de 1988 el peticionario notificó al Departamento de Salud su intención e interés de participar en la vista pública a celebrarse para la consideración de la

solicitud del H.H.M. En esa comunicación solicitó que se le comunicara la fecha en que se celebraría la referida vista. En respuesta, la Secretaría Auxiliar le notificó el 17 de agosto de 1988 que la vista se celebraría el 2 de septiembre de 1988.

Así las cosas, el 1ro de septiembre de 1988 el peticionario solicitó al Departamento de Salud la suspensión de la vista señalada, fundándose en que el H.H.M. no cumplió con el requisito de notificar su intención de presentar la solicitud del certificado de necesidad y conveniencia con treinta (30) días de antelación a la fecha de presentación de la solicitud —Art. 8 de la Ley de Certificados de Necesidad y Conveniencia, 24 L.P.R.A. sec. 334f-3— y que la notificación de la vista a celebrarse no se hizo con quince (15) días de antelación a su celebración, como exige el Art. VIII-1 del Reglamento, y en violación al debido proceso de ley. Adujo, además, que necesitaba tiempo adicional para prepararse adecuadamente y presentar su oposición a la solicitud del H.H.M.

El Departamento de Salud denegó la moción de suspensión. Ese mismo día el peticionario presentó moción de suspensión de vista ante el Tribunal Superior, Sala de Bayamón. En reunión en cámara con el Hon. Juez José F. Rodríguez Rivera argumentó, *ex parte*, los méritos de su petición. El tribunal de instancia emitió una orden que suspendió la vista señalada para el 2 de septiembre y que ordenó a los aquí recurridos a mostrar causa, dentro de los cinco (5) días siguientes, por la cual no se debía conceder la suspensión solicitada por el peticionario. Ese mismo día, el tribunal notificó la orden vía telefónica al Administrador del H.H.M.

El 2 de septiembre, fecha señalada para la vista, comparecieron las partes ante el oficial examinador. El representante legal del H.H.M. argumentó ante dicho oficial los motivos por los cuales no debía suspenderse la vista. El oficial examinador resolvió suspender la vista dada la orden del Tribunal Superior.

El H.H.M., en cumplimiento de la orden de mostrar causa de 1ro de septiembre, procedió a contestar y enviar copia de su contestación al peticionario el 7 de septiembre de 1988. En reunión en cámara, *ex parte*, solicitó del Honorable Juez Rodríguez Rivera que dejara sin efecto su orden y señalara fecha para la celebración de la vista administrativa. El foro de instancia procedió a dejar sin efecto su orden de 1ro de septiembre y emitió otra que autorizó la celebración de la vista para el *8 de septiembre de 1988.*

El 8 de septiembre se celebró la vista con la comparecencia del peticionario, quien interrogó a los testigos del H.H.M. Ese mismo día el peticionario recurrió ante nos mediante recurso de *certiorari.* En el mismo cuestiona la legalidad de la Orden de 7 de septiembre de 1988 mediante la cual el foro de instancia señaló para el 8 de septiembre la celebración de la vista administrativa. Instó, además, moción en auxilio de jurisdicción para solicitar la paralización de los efectos de dicha orden.

Mediante Orden de 9 de septiembre de 1988 concedimos término a los recurridos para que mostraran causa por la cual:

> . . . 1) no debemos revocar la resolución dictada el 7 de septiembre de 1988 por el Tribunal Superior, Sala de Bayamón; 2) sobre la aplicación a este caso, de las disposiciones de la ley Núm. 139 [de] 18 de julio de 1986 y del Reglamento del Departamento de Salud Núm. 56, en lo referente a la prohibición relativa a la radicación y determinaciones sobre certificados de necesidad y conveniencia dentro del período de dos meses antes y dos meses después de la celebración de las elecciones generales en Puerto Rico[,] y 3) sobre el planteamiento hecho por la parte recurrente de que la orden emitida por el [t]ribunal de [i]nstancia el 7 de septiembre de 1988 fue dictada exparte, y sin habérsele notificado a dicha parte el escrito que dio base a la misma. Resolución de 9 de septiembre de 1988, págs. 1–2.

Las partes han comparecido. Resolvemos.

## II

El peticionario adelanta dos (2) fundamentos para solicitar la revocación de la orden del tribunal de instancia. El primero es que no se le dio adecuada notificación de la moción que solicita se deje sin efecto la orden de dicho tribunal de 1ro de septiembre de 1988 y que ordena la suspensión de la vista administrativa a celebrarse el 2 de septiembre del mismo año. El segundo, y de mayor importancia, es que la fecha en que la orden cuestionada señala la vista —el 8 de septiembre— cae dentro del período de veda pre eleccionario señalado por la Ley Núm. 2, *supra.*

En primer lugar, y por su importancia, discutiremos el señalamiento sobre la veda y luego analizaremos el otro planteamiento hecho ante nos.

## III

Puerto Rico es uno de los pocos países cuyo ordenamiento legal[1] contiene unos períodos de *veda pre y post eleccionaria* donde el Estado se autolimita en la realización de ciertos actos para asegurar la pureza de sus funciones en dichos períodos. El trámite y otorgamiento de los certificados de necesidad y conveniencia es uno de los aspectos regulados por la veda. La Ley Núm. 139 de 18 de julio de 1986 (24 L.P.R.A. sec. 334i-1), enmendó la Ley Núm. 2, *supra,* para establecer una veda pre y post eleccionaria.

Dispone, en lo pertinente, dicha ley:

A los fines de proteger los mejores intereses de las partes, *no podrán radicarse* solicitudes para la obtención de certificados de necesidad y conveniencia ni el Departamento de Sa-

---

[1] Véanse: Sec. 4.7 de la Ley de Personal del Servicio Público de Puerto Rico, 3 L.P.R.A. sec. 1337; *Ortiz v. Alcalde de Aguadilla*, 107 D.P.R. 819, 824 (1978); Op. Sec. Just. Núm. 1980-25; Art. 7.08 de la Ley Orgánica de los Municipios de Puerto Rico, 21 L.P.R.A. sec. 3208.

lud *tomará determinación alguna sobre ningún asunto relacionado con dichos certificados* durante períodos pre y post eleccionarios.

Esta prohibición comprenderá el período de dos (2) meses antes y dos (2) meses después de la celebración de las elecciones generales en Puerto Rico. (Énfasis suplido.) 24 L.P.R.A. sec. 334i-1.

Idéntica disposición contiene el reglamento aprobado por el Secretario de Salud para implantar las disposiciones de la ley.[2] Art. IV–2(g) del Reglamento, pág. 10.

Al discutir en el Senado el proyecto que originó la Ley Núm. 139, *supra* (P. del S. 471), la Senadora Ana Nisi Goyco, entonces *Presidenta de la Comisión de Salud y Calidad Ambiental de ese cuerpo*, al explicar el alcance de la medida a la senadora Rivera Ramírez le señaló, en lo aquí pertinente, que en el proyecto "hay una enmienda clave que es que no permite que el *Titular de Salud* pueda *otorgar* estos certificados de necesidad y conveniencia ni dos (2) meses antes ni dos (2) meses después de año de elecciones". (Énfasis suplido.) Informe de la Comisión de Salud y Calidad Ambiental, previo estudio y consideración del P. del S. 471, 30 de mayo de 1985, pág. 5205.

 Con esta enmienda de naturaleza profiláctica se trató de evitar la presentación y que el Secretario de Salud tomara determinaciones sobre los certificados de necesidad y conveniencia en una época donde pueden prevalecer consideraciones ajenas a los mejores intereses de las partes y a la planificación ordenada de las facilidades y servicios de salud a ser ofrecidos a nuestro pueblo. Por ser el período comprendido en la veda uno donde llegan a su máxima efervescencia

---

[2] El Reglamento del Departamento de Salud Núm. 56 de 15 agosto de 1986 entró en vigor el 14 de septiembre de 1986.

las pasiones políticas,[3] y donde pueden las flaquezas humanas traducidas en bondad para los partidarios o en represalia contra el adversario —*Ortiz v. Alcalde de Aguadilla, supra*— prevalecer sobre las necesidades reales del pueblo en el campo de la salud, se impone la prohibición como detente legislativo en pro del bienestar común.

La ley es clara al prohibir la radicación (sic)[4] y la determinación[5] sobre asuntos relacionados con los certificados. La prohibición incluye, entre otras, la presentación de una solicitud para la concesión de un certificado de necesidad y conveniencia, y la determinación del Secretario de Salud de conceder o denegar el certificado durante el período vedado.

Al comparar la veda de la Ley Núm. 139, *supra*, con la dispuesta en la Ley de Personal del Servicio Público de Puerto Rico (en adelante Ley de Personal), 3 L.P.R.A. sec. 1337, notamos que esta última reconoce expresamente una excepción en casos de "necesidades urgentes del servicio . . .". La veda de la Ley Orgánica de los Municipios de Puerto Rico, 21 L.P.R.A. sec. 3208, también expresamente dispone varias excepciones, entre éstas, no incurrir en obligaciones o gastos que excedan del 50% de la asignación presupuestaria de cada partida, excepto para ciertos fines especiales, y no comprometerse el municipio en contratos de arrendamientos de servicios salvo ciertas circunstancias.

Nótese que tanto la Ley de Personal como la Ley Orgánica de los Municipios de Puerto Rico no pretenden congelar

---

[3] Hemos reconocido anteriormente el "ambiente altamente politizado" que reina en nuestro país. *González Martínez v. López*, 118 D.P.R. 190, 196 (1987); *Olivieri Morales v. Pierluisi*, 113 D.P.R. 790 (1983).

[4] El término "radicar" se define como "estar o encontrarse ciertas cosas en determinado lugar". *Diccionario de la Lengua Española*, 20ma ed., Madrid, Ed. Espasa-Calpe, 1984, T. II, pág. 1138.

[5] El término "determinar" se define como "señalar, fijar una cosa para algún efecto . . . [t]omar resolución . . . [s]entenciar, definir". *Diccionario de la Lengua Española, op. cit.*, T. I, pág. 489.

el funcionamiento del Gobierno, sino establecer unas medidas de autolimitación razonables. Es de presumir que el legislador, conocedor de ambas leyes, pretendía igual propósito al aprobar la Ley Núm. 139, *supra.* Véase *Reyes Coreano v. Director Ejecutivo*, 110 D.P.R. 40, 66 (1980).

■ Por otra parte, la Ley Núm. 2, *supra*, establece unos períodos cortos dentro de los cuales el Secretario de Salud tiene que tomar determinadas decisiones. *Así, éste tiene noventa (90) días para tomar una decisión sobre una solicitud para un certificado de necesidad y conveniencia a partir de la notificación al público sobre la misma (24 L.P.R.A. sec. 334f-8), y concede una causa de acción* a los perjudicados para que los tribunales puedan ordenar que éste tome una decisión a esos efectos (24 L.P.R.A. sec. 334f-9). Los proponentes, por otro lado, tienen treinta (30) días para notificar al Secretario de Salud sus intenciones antes de presentar el certificado o la solicitud de exención cuando se propongan llevar a cabo las transacciones previstas en la Ley de Certificados de Necesidad y Conveniencia, 24 L.P.R.A. secs. 334–334j. También el Secretario de Salud debe notificar dentro de los treinta (30) días siguientes al recibo de la solicitud a las personas afectadas y al público en general. 24 L.P.R.A. sec. 334f-6. También, se concede un término de treinta (30) días para solicitar una reconsideración y se requiere del Secretario de Salud que resuelva dicha reconsideración dentro de un término de sesenta (60) días. 24 L.P.R.A. sec. 334f-10. Se dispone, además, un término de treinta (30) días para la revisión judicial de la decisión administrativa. 24 L.P.R.A. sec. 334f-11.

■ La ley, al establecer estos términos cortos, obviamente considera que las solicitudes de certificados de necesidad y conveniencia deben tramitarse y decidirse con relativa prontitud dada la naturaleza de la reglamentación.

■ Examinada la veda contenida en la Ley Orgánica de los Municipios de Puerto Rico y en la Ley de Personal, y la configuración de términos cortos en el proceso para la consideración y decisión de certificados de necesidad y conveniencia, la veda introducida por la Ley Núm. 139, *supra*, no puede ser interpretada de una forma que implique derrotar tales propósitos al adoptar una norma cuyo efecto práctico conlleve la paralización y congelación total del Departamento de Salud, en un área tan importante como la de evaluación de las solicitudes de certificados de necesidad y conveniencia, durante cuatro (4) meses. Una interpretación contraria implicaría que las solicitudes para prestar servicios de salud previstos en la ley (*e.g.* hospitales, facilidades de cuidado extendido, casas de salud, centros de diagnóstico y tratamiento, farmacias, laboratorios clínicos, bancos de sangre, etc.) dormirán en una gaveta administrativa hasta que, transcurrido los cuatro (4) meses, finalice la veda.

■ El proponente de un certificado de necesidad y conveniencia debe presentar su solicitud *antes* del período de veda.

■ En la concesión o en la denegación de certificados de necesidad y conveniencia intervienen diversos funcionarios en carácter y etapas diversas durante el proceso. Sólo mediante la delegación de los innumerables deberes que la Ley Núm. 2, *supra*, impone al Secretario de Salud, puede éste cumplir su encomienda de adjudicar una solicitud de certificado de necesidad y conveniencia bajo los términos del tiempo que le impone la ley.

■ La adjudicación final por el Secretario de Salud es la culminación de un proceso de carácter adjudicativo institucional. *Cf. A.D.C.V.P. v. Tribunal Superior*, 101 D.P.R. 875, 881 (1974); *P.R. Tel. Co. v. Tribunal Superior*, 102 D.P.R. 231, 232–233 (1974); *P.S.P. v. Com. Estatal de Elec-*

*ciones*, 110 D.P.R. 400, 417 (1980). Esa decisión personal del Secretario de Salud se fundamenta en las diversas consideraciones de las decisiones o determinaciones interlocutorias de sus subalternos en etapas anteriores.(6) Esa es la etapa final del proceso y la que está vedada por la Ley Núm. 139, *supra*, durante el período eleccionario. La intención legislativa no fue prohibir las decisiones o determinaciones interlocutorias en etapas anteriores en ese proceso adjudicativo institucional.

En síntesis, el Secretario de Salud no puede tomar una *determinación que conceda* o que *deniegue* el *certificado*, o que conlleve dichos efectos durante el período de veda.

Nada impide, sin embargo, que el Departamento de Salud evalúe las solicitudes ya presentadas *antes* de entrar en vigor la veda, que haga las notificaciones correspondientes y que celebre las vistas necesarias para evaluar dichas solicitudes. La Ley Núm. 2, *supra*, establece un procedimiento administrativo de *naturaleza formal*,(7) *Ruiz Hernández v. Mahiques*, supra, el cual ofrece suficientes garantías para asegurar que dicho proceso se lleve a cabo con pureza administrativa. Entre estas garantías de ley cabe mencionar que el Secretario de Salud debe hacer determinaciones de hecho que estén sostenidas por la evidencia, 24 L.P.R.A. sec. 334f-7; que ningún funcionario que desempeñe funciones en relación con las solicitudes, una vez el caso se encuentre en reconsideración o en una etapa posterior, puede comunicarse con el solicitante, su representante o con

---

(6) Véase K.C. Davis, *Administrative Law Treatise*, 2da ed., San Diego, Davis Pub. Co., 1983, Cap. 17.

(7) *Cf.* con la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2131), que entró en vigor el 12 de febrero de 1989.

los opositores del certificado o sus representantes, en ausencia de las otras partes (24 L.P.R.A. sec. 334f-12), so pena de incurrir en delito menos grave, 24 L.P.R.A. sec. 334h; que el oficial examinador hará determinaciones de hecho y conclusiones de derecho en su informe al Secretario de Salud, Art. VIII-8 del Reglamento, pág. 36; que las vistas serán grabadas y se velará por el cumplimiento del debido proceso de ley, Art. VIII-9 del Reglamento; que ninguna parte, incluso las personas afectadas, podrá comunicarse con el oficial examinador que presida la vista una vez ésta haya sido señalada, Art. VIII-11 del Reglamento; que el certificado puede ser revocado en cualquier momento si se demuestra que el peticionario, a sabiendas, sometió información falsa, Art. IX-8 del Reglamento, págs. 38–39; que la decisión del Secretario de Salud debe fundamentarse en la recomendación que le hizo el oficial examinador y en la información obrante en el expediente, y que de no seguir esta recomendación, el Secretario de Salud debe exponer las razones para ello y su decisión debe estar fundamentada y sostenida por la evidencia, Art. X-1, 2 y 3 del Reglamento, pág. 39. Además, la ley y el reglamento le conceden a la parte afectada el derecho a solicitar la reconsideración y posterior revisión judicial. Arts. XI y XII del Reglamento; 24 L.P.R.A. secs. 334f-10 y 334f-11.

*El proceso evaluativo* sólo conlleva la toma de determinaciones interlocutorias a la determinación final del Secretario de Salud sobre la concesión o la denegación de un certificado de necesidad y conveniencia. Como tal, no está sujeto a la veda.

Expuesto el marco conceptual y el alcance de la Ley Núm. 139, *supra,* concluimos que la vista llevada a cabo como parte de la evaluación del certificado de necesidad y conveniencia en el caso de autos no estaba prohibida por la ley.

## IV

En este caso resulta importante determinar si la vista administrativa de 8 de septiembre de 1988 fue celebrada antes o durante el período vedado. Ello es así ya que la Ley Núm. 2, *supra*, le concedió al Secretario de Salud un término de noventa (90) días, luego de la notificación al público en general mediante edicto, para que emitiera su decisión —Art. 12 de la Ley de Certificados de Necesidad y Conveniencia, 24 L.P.R.A. sec. 334f-8, y Art. X-2 del Reglamento, pág. 39— y le concedió a la parte perjudicada por una demora el derecho a instar acción de *mandamus* para obligarlo a cumplir con tal deber en el término prescrito. Art. 13 de la Ley de Certificados de Necesidad y Conveniencia, 24 L.P.R.A. sec. 334f-9.

En el caso de autos, el edicto al público en general fue publicado el 9 de junio de 1988. El Secretario de Salud tenía hasta el 7 de septiembre para emitir su decisión. Previo a ello debía haberse celebrado la vista administrativa. Si ésta se hubiera celebrado antes de la veda, el Secretario de Salud podía adjudicar antes de la prohibición. Si se hubiere celebrado durante la veda, su decisión quedaría diferida —por efecto de la ley— hasta después de transcurrido el período vedado. La Ley Núm. 139, *supra*, por ser una ley especial posterior a la Ley Núm. 2, *supra*, tuvo el efecto de prorrogar el término de noventa (90) días y diferir la decisión del Secretario de Salud hasta después de transcurrido el período de veda, cuando su decisión personal cae dentro de ese período. Véase R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, Cap. 69, págs. 441–443.

Aquí, la vista celebrada el 8 de septiembre de 1988 se llevó a cabo fuera del período de veda. Veamos.

Como señalamos anteriormente, el Art. 21-A de la Ley de Certificados de Necesidad y Conveniencia, *supra*, dispone

que la veda en estos casos comprenderá el período de dos (2) meses antes y dos (2) meses después de la celebración de las elecciones generales en Puerto Rico. Nuestro ordenamiento jurídico nos brinda las normas necesarias para computar este término.

■ El Art. 8 del Código Civil, 31 L.P.R.A. sec. 8, establece, en lo pertinente, que "[s]i en las leyes se habla de meses . . . *se entenderá que los meses son de treinta días* . . .". (Énfasis suplido.)(8)

■ De suerte que la veda pre eleccionaria de dos (2) meses prevista en la Ley Núm. 139, *supra, se extiende a los sesenta (60) días naturales antes del día de la celebración de las elecciones generales en Puerto Rico.*(9) Ello es así ya que sus disposiciones sólo hablan de meses sin especificar sus días.

Tomamos conocimiento judicial de que *las elecciones de 1988* en Puerto Rico *se celebraron el martes 8 de noviembre,* "primer martes después del primer lunes de noviembre". 16 L.P.R.A. sec. 3201.

Determinada la fecha en que han de celebrarse las elecciones generales, procede hacer el cómputo de los sesenta (60) días naturales de veda pre eleccionaria *contándolos desde esa fecha hacia atrás.*(10) En ese cómputo se excluye el

---

(8) Al comentar esta disposición, Scaevola expresa:

"Se ocupa el artículo de los diversos espacios de tiempo que pueden señalar las leyes: meses, días y noches.

"Los dos primeros no ofrecen dudas, si bien en cuanto a los meses establece una distinción, según se determinen o no por sus nombres. En este caso, se computan por los días que respectivamente tengan el mes o meses de que se trate; en el contrario, por treinta días, cualquiera que sea el número de éstos que lo compongan." Q.M. Scaevola, *Código Civil Comentado*, 6ta ed., Madrid, Ed. Reus, 1949, T. I, pág. 267.

(9) De igual manera, la veda post eleccionaria de la ley se refiere a los sesenta (60) días naturales después de celebradas las elecciones generales.

(10) En caso de la veda post eleccionaria, el cómputo sería desde el día de la celebración de las elecciones hasta sesenta (60) días naturales despúes.

primer día (que aquí sería el de las elecciones) y se incluye el último, a menos que éste sea día de fiesta, en cuyo caso será también excluido según ordena el Art. 388 del Código Político, 1 L.P.R.A. sec. 72.

Al aplicar la referida fórmula al caso de maras se desprende que para el 1988 el período de veda pre eleccionaria[11] *comenzaba el 9 de septiembre de ese año.*[12]

Siendo ello así, la orden del tribunal de instancia emitida el 7 de septiembre —que ordena la celebración de la vista administrativa para el 8 de septiembre de 1988— no violaba, contrario a la posición del peticionario, las disposiciones de la Ley Núm. 139, *supra*, ni del Reglamento relativas a la veda pre eleccionaria. La vista celebrada ese día es válida. En tales circunstancias, el Secretario de Salud había podido adjudicar la solicitud, con el beneficio del informe del oficial examinador, antes de 9 de septiembre de 1988.

## V

Resulta inmeritorio el segundo señalamiento de error de los peticionarios en cuanto a la falta de notificación adecuada de la Orden de 7 de septiembre de 1988. En primer lugar, el propio peticionario conocía que la orden por él solicitada el 2 de septiembre de 1988 le concedía a los recurridos cinco (5) días (exactamente hasta el 7 de septiembre) para mostrar causa por la cual no debía concederse la suspensión de la vista. En segundo lugar, el 7 de septiembre H.H.M. remitió copia de su oposición a la suspensión y solicitud de señalamiento de vista al peticionario por correo certificado. En tercer lugar, el daño inminente debido a la proximidad de la veda y la proximidad del término en ley para que el Secre-

---

[11] Al seguir la fórmula, la veda post eleccionaria terminaría el 7 de enero de 1989.

[12] Tomamos conocimiento judicial que ese día no fue de fiesta, por lo que no se excluye del cómputo. Art. 388 del Código Político, 1 L.P.R.A. sec. 72.

tario de Salud emitiera su decisión sobre la solicitud justificaban que el H.H.M. solicitara y el tribunal de instancia ordenara dejar sin efecto la orden anterior, aun cuando no se le diera aviso previo al peticionario.([13]) Véase Regla 57.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III. A ese mismo proceder habían recurrido los peticionarios para obtener la suspensión de la vista.

## VII

Nos resta señalar que, aun cuando al emitir esta decisión ha transcurrido el término tanto de la veda pre como post eleccionaria, en este caso nuestra decisión no resulta académica. La celebración de elecciones generales y la correspondiente activación de la veda y sus efectos paralizantes es una cuestión recurrente que crea la probabilidad real de que el asunto aquí planteado se repita. Por lo tanto, el caso ante nos es de excepción a la aplicación de la doctrina de academicidad. *El Vocero v. Junta de Planificación*, 121 D.P.R. 115 (1988), y autoridades allí citadas.

Por los fundamentos expuestos, *se expide el recurso y se dictará sentencia que confirme la orden del tribunal de instancia y que ordene al Departamento de Salud continuar con los procedimientos en forma compatible con lo aquí expuesto.*

El Juez Presidente Señor Pons Núñez y el Juez Asociado Señor Negrón García no intervinieron.

---

([13]) Consideramos que la mejor práctica aconseja que se le dé notificación a las partes sobre este tipo de órdenes, aunque sea a través de la vía telefónica. La importancia de los derechos de las partes así lo amerita.