Roxana M. ZAMBRANA
TORRES, Plaintiff,

v.

Sergio L. GONZALEZ,
et al., Defendants.

No. CIV. 95–1145(SEC).

United States District Court,
D. Puerto Rico.

Oct. 14, 1999.

Harry Anduze–Montano, San Juan, P.R., for Plaintiffs.

Isabel Abislaiman–Quilez, Axtmayer, Adsuar, Muñiz & Goyco, Fernando Pérez–Colón, Eric Perez–Ochoa, Roberto E. Vega–Pacheco, Martinez, Odell & Calabria, Luis R. Pérez–Giusti, Mignucci & Perez–Giusti, Hato Rey, P.R. for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is defendants' motion for summary judgment (Docket # 31). Defendants argue that plaintiff's due process claim under the Fourteenth Amendment should be dismissed because plaintiff's appointment was null and void and therefore she had no proprietary interest in her employment. They also argue that plaintiff's First Amendment claim is time-barred and should be dismissed. In the alternative, they aver that even if the Court finds that plaintiff has stated a valid claim under 42 U.S.C. § 1983 the above-captioned action should be dismissed because they are shielded by the qualified immunity defense. Finally, they request that plaintiff's claims under COBRA be dismissed because she was not eligible for said coverage.[1] Upon review of the applicable law and the pertinent facts, defendants' motion is **GRANTED IN PART** and **DENIED IN PART (Docket # 31).**

### Summary Judgment Standard

The First Circuit has stated that:

[s]ummary judgment has a special niche in civil litigation. Its role is 'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.' *Wynne v. Tufts University School of Medicine*, 976 F.2d 791, 794 (1st Cir. 1993). The device allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money and permitting courts to husband scarce judicial resources.

*McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995). According to Fed.R.Civ.P. 56(c), summary judgment should issue whenever "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also NASCO, Inc. v. Public Storage, Inc.*, 29 F.3d 28 (1st Cir.1994). It is not enough to conjure up an alleged factual

---

1. On June 18, 1999 this Court held a status conference with the parties (Docket # 68) in which plaintiff's COBRA claims were dismissed. Accordingly, we shall not discuss the merits of defendant's argument and shall proceed to enter partial judgment dismissing said claims.

dispute between the parties; to defeat summary judgment, there must exist a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

For a dispute to be "genuine", there must be sufficient evidence for a reasonable trier of facts to resolve the issue in favor of the non-moving party. *U.S. v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir.1992). *See also, Boston Athletic Assn. v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989). By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Government Development Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir.1994).

In determining whether to grant a summary judgment, the Court may not, however, weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668 (1st Cir.1994) Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id. citing Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932, 936 (1st Cir.1987). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines*, 42 F.3d at 684.

**Factual Background**

On February 3, 1995, plaintiff Roxana M. Zambrana Torres brought an action in the United States District Court for the District of Puerto Rico. In that complaint, she sought injunctive relief and compensatory and punitive damages as a result of the allegedly politically motivated discrimination and hostile environment created by her employers. She argues that such actions forced her to report to the State Insurance Fund and take a sick leave from her job.

Defendant Sergio Gonzalez has been at all pertinent times the Executive Director of the Puerto Rico Highway Authority. He is being sued in his personal and official capacity. Defendant Carlos Colón de Armas has been at all pertinent times, the Subdirector of the Puerto Rico Highway Authority. He is being sued in his personal and official capacity. Defendant Manuel Feliciano Parrilla has been at all pertinent times, the Assistant Executive Director of Administration of the Puerto Rico Highway Authority. He is sued in his personal and official capacity. Defendant Elba Rolón was, at all pertinent times, the former Human Resources Director of the Puerto Rico Highway Authority. She is sued in her personal and official capacity. Defendant Oscar Romero Feliciano has been at all pertinent times the Human Resources Director of the Puerto Rico Highway Authority. He is sued in his personal and official capacity. Defendant Laura Matos Velilla was at all pertinent times, a Human Resources Supervisor II of the Puerto Rico Highway Authority. She is also sued in her personal and official capacity.

The Puerto Rico Highway Authority ("PRHA") is a public corporation of the Commonwealth of Puerto Rico. According to plaintiffs, all of the above named defendants were acting under color of state law and pursuant to their authority as employees of the Puerto Rico Highway Authority.

The Puerto Rico Highway Authority employed plaintiff Zambrana from June 3, 1991 until March 4, 1994. At the time of the termination of her employment, plaintiff occupied the position of Director of the Labor Relations Office in the Human Resources Area and earned a basic annual salary of $32,000 plus medical and pension plan, as well as other fringe benefits.

Plaintiff first applied to the position of Director of the Labor Relations Office in the Human Resources Area after the PRHA published its employment announcement 92–122 for such position on April 9, 1992. Her application was effectively filed on April 27, 1992 and on May 5,

1992 plaintiff Zambrana was certified by Mr. Angel Morales, Supervisor of Human Resources II that she was qualified for the position of Director of Labor Relations.

On May 11, 1992, the Director of Human Resources Area at PRHA, Mrs. Carmen Vanessa Davila, interviewed plaintiff for the above mentioned position. On May 18.1992, the Executive Director of PRHA at the time, Jorge L. Bigas Mulero, notified plaintiff Roxana Zambrana of her appointment to occupy the position of Director of the Labor Relations Bureau of the Area of Human Resources on a probationary basis. On October 8, 1992, Mr. Bigas notified Zambrana that she had approved her probationary period and that her permanent status as career employee was effective as of September 18, 1992, subject to its processing in January 3, 1993. Mr. Bigas' letter to Zambrana read as follows:

In accordance with the authority conferred upon me by Public Law No. 74 of June 23, 1965, as amended, renamed by Public Law No. 1 as the Highways and Transportation Authority, and the Norms on Probationary Period, I inform you that you have approved the probationary period for the position of Labor Relations Director in the Industrial Relations Office of this Authority's Human Resources Area, as certified by your immediate supervisor.

To that effect, you fulfilled the requirements to occupy said position permanently effective September 18, 1992. Nevertheless, the formalities will be conducted on January 3, 1993, after the pre and post election moratorium ends.

During the month of January of 1993, plaintiff Zambrana commenced her duties as Labor Relations Director without seeming incident.

On November of 1992, Dr. Pedro Roselló Gonzalez won the position of Governor in Puerto Rico's general elections, as a candidate for the New Progressive Party ("NPP"). On January 1993 Dr. Roselló was sworn in to the governorship and afterward chose the new agency directors. During this process he selected as new Executive Director of the Puerto Rico Highway Authority Mr. Sergio L. Gonzalez (hereinafter "Gonzalez"). During his first months in office, defendant Gonzalez named defendants Carlos Colón de Armas as PRHA Subdirector, Manuel Feliciano Parrilla as Assistant Executive Director for Administration and Finances and Elba Rolón de Córdova as Human Resources Director.

According to plaintiff Zambrana, all of the above mentioned defendants are active members of the New Progressive Party. Plaintiff is an active member of the Popular Democratic Party ("PDP") having worked as Executive Assistant to former PDP elected Representative, Hector Castro Marchand. Plaintiff alleges that all of the abovementioned defendants either indifferently acquiesced or actively participated in concert among themselves to assign defendant Laura Matos Velilla to engage in an allegedly spurious audit of plaintiff's personnel record to use it as a basis to eliminate plaintiff from her supervisory career position for not belonging to the New Progressive Party.

During the month of January, plaintiff allegedly had to endure the comments by co-workers that Mr. Gonzalez would clean the house ("limpiar la casa") of all Populares, that few would be saved, and that they would finish all the "populares" in the PRHA.

Plaintiff Zambrana also alleges a continuing pattern of harassment leading up to the date in which her appointment was invalidated by defendants. On July 9, 1993, defendant Sergio Gonzalez sent Zambrana a letter dated June 22, 1993, informing her that an audit of her personnel record at PRHA reflected that her appointment as Director of the Labor Relations Office was contrary to the PRHA personnel regulations. The letter gave plaintiff 20 days to respond to the allegations contained in the letter and to submit

any and all documentation to buttress her defense.

On August 9, 1993, plaintiff requested from Mr. Sergio Gonzalez any and all information related to the alleged audit of her personnel records. On September 24, 1993, plaintiff Zambrana received a letter dated September 15, 1993, wherein Mr. Manuel Feliciano Parrilla, PRHA Assistant Director for Administration and Finance, summoned plaintiff for an administrative hearing. Mr. Feliciano also informed plaintiff that the documents she had supplied with her response to the June 22, 1993 letter had been deemed insufficient by the PRHA.

On September 28, 1993, plaintiff replied to Mr. Feliciano and requested the continuance of the administrative hearing, underlining that the notification given to her was defective and violated her due process rights, since it had failed to provide the necessary information regarding her audit made by the PRHA. She alleged that such noncompliance prevented her from making an adequate defense.

Mr. Feliciano held a hearing where plaintiff's counsel presented to the arbiter the due process claim alleged by plaintiff in her letter of September 28, 1993. The PRHA was not represented at the hearing. Pursuant to this development, the arbiter ordered the PRHA to amend its notification and comply with plaintiff's due process rights. He also ordered the PRHA to appear represented by counsel at the next hearing.

Plaintiff claims that the letter sent by Mr. Gonzalez on November 24, 1993, did not correct the due process infirmities. On December 6, 1993, the arbiter held an administrative hearing despite the plaintiff's opposition, who insisted that the PRHA had not complied with the arbiter's previous order. At the hearing, plaintiff reiterated her position that PRHA had failed to provide her with the information which the arbiter had ordered it to disclose. Once again, PRHA failed to come represented by a lawyer, in apparent disregard for the arbiter's previous order.

Although PRHA lacked legal representation at the hearing, the arbiter ordered plaintiff to present her evidence even though the PRHA would not present any evidence. When the arbiter informed defendant Matos to contact the PRHA lawyers, Ms. Matos told him that the PRHA had decided not to present any evidence, and that it would present evidence before the appeal committee, and not at the administrative hearing. Notwithstanding this information, the arbiter ordered plaintiff to present her evidence.

Plaintiff objected on the record, and then presented as her first witness defendant Laura Matos. According to plaintiff, defendant Matos admitted that all dismissed employees were members of the PDP. After some questioning, defendant Matos refused to answer any more questions, since the attorneys for the PRHA had instructed her to refrain from answering questions at this hearing.

Meanwhile, plaintiff alleges that she suffered continuous political persecution. On February 10, 1994, she reported to the State Insurance Fund (SIF), due her unstable emotional condition, purportedly related to the political persecution and harassment she suffered at her work place. The SIF granted plaintiff a sick leave for her emotional condition.

During her period of convalescence, on March 4, 1994, plaintiff received a letter from Mr. Gonzalez dated February 9, 1994. The letter stated that her appointment was contrary to the principle of merit and PRHA regulations. Accordingly, such appointment was declared null and terminated. On that same date, defendants dismissed plaintiff from her position at the PRHA.

On April 4, 1994, plaintiff filed an appeal before the appeals committee of the Highway Authority. Such appeal is pending and no hearing has been scheduled.

Pursuant to this series of events, plaintiff filed the present action on February 3, 1995, pursuant to 42 U.S.C. § 1983 for violation of the First, Fifth and Fourteenth Amendment of the United States Constitution and Article II of the Constitution of the Commonwealth of Puerto Rico, §§ 1,4,6,7 and 8. Plaintiff also claims political discrimination under Law 100 and Article 1802 for pain and mental suffering. She also seeks injunctive relief to enjoin defendants from further discrimination against plaintiff due to her political beliefs and association in the future. Finally she claims relief due defendant's failure to notify her of her right to continued medical coverage, as required by the 1986 Consolidated Omnibus Budget Reconciliation Act (COBRA) Pub.L.No. 99–272, 100 Stat. 82 (1986).

**Procedural History**

On April 21, 1997 the Court issued an order for certification to the Supreme Court of Puerto Rico. Specifically, we asked them to address whether plaintiff's approval of a probationary period during the electoral prohibition period constitutes a personnel transaction within the Merit Principle of the Public Personnel Law of Puerto Rico. On June 10, 1998, the Supreme Court of Puerto Rico issued a plurality opinion in which it decided the question certified in the affirmative, that is, that plaintiff's probationary appointment constituted a personnel transaction within the merit principle of the Puerto Rico Service Personnel Act, and was thus null and void. On October 22, 1998, the Supreme Court of Puerto Rico denied a motion for reconsideration.

Defendants argue that the present action should be dismissed on the following grounds: that plaintiff's appointment was null and void as it was made in violation of the merit principle as established by the Public Personnel Law of Puerto Rico and that therefore she did not have a proprietary interest in the position; that plaintiff's First Amendment claim is barred by the applicable statute of limitations; and that plaintiff's COBRA claim should be dismissed as she was not entitled to COBRA coverage.

We shall address each of these arguments in turn.

**Discussion—Whether plaintiff's appointment was made in violation of the merit principle of Puerto Rico's Personnel Law and was thus null and void**

As stated above, we certified this very question to the Supreme Court of Puerto Rico, which held, in a plurality opinion, that plaintiff's probationary appointment constituted a personnel transaction prohibited by the pre- and post-electoral prohibition established in Section 4.7 of the Puerto Rico Public Service Personnel Act, 3 L.P.R.A. § 1337. The determination that plaintiff's appointment was null and void mandates a finding that she has no proprietary rights in her employment and as such, may not assert due process claims under the Fourteenth Amendment.

Associate Justice Jaime B. Fuster correctly notes that the judgment issued by the Court is not binding upon the undersigned as it was supported only by a plurality opinion, and no majority opinion was issued by the Court. Justice Fuster, in his dissenting opinion, states we should look at the Court's only binding precedent on this issue, which is *Hospital San Pablo v. Hospital Hermanos Melendez*, 123 D.P.R. 720 (1989). We agree with Justice Fuster regarding this issue, and shall conduct an independent review of the issues, using the various opinions issued by the Court as persuasive discussions of the question at issue.

Section 21 of the Highway Authority Personnel Regulations is identical to the pre-and post-electoral prohibition regarding personnel transactions contained in Section 4.7 of the Puerto Rico Public Service Personnel Act, the only variation being that Section 21 substitutes "the Executive Director" for "the authorities". Section 21 provides:

**Prohibition**

> For the purpose of guaranteeing the faithful application of the merit principle in public service during pre- and post-electoral periods, the Executive Director shall abstain from making any personnel transactions involving areas essential to the merit principle, such as appointments, promotions, demotions, transfers, trainings, and changes in the category of employees.

> This prohibition shall comprise a period of two (2) months before and two (2) months after the General Elections are held in Puerto Rico.

> This prohibition shall be absolute, except for those personnel transactions that, if not made, would adversely affect the services rendered in essential programs. All exceptions shall have the previous approval of the Executive Director and of the Secretary. The application for such transaction shall indicate the adverse effects that such exception will prevent.

The text of the provision clearly bans "any personnel transaction involving areas essential to the merit principle", which includes appointments. Furthermore, the prohibition is absolute, only allowing an exception for "those personnel transactions that, if not made, would adversely affect the services rendered in essential programs." Significantly, however, any exception must be previously approved by the Executive Director and the Secretary of Transportation and Public Works, which, undisputedly, did not occur in plaintiff's case.

In his concurring opinion, Justice Antonio Negrón García stated:

> We have no doubt that we are dealing here with a banned transaction involving an area essential to the merit principle (appointments), which was not previously requested, justified, and approved as an exception. An appointment logically comprises [a process of] recruitment and selection, which in turn includes the satisfactory completion of a probationary period. This is an essential step in personnel selection, without a probationary period, no one can be appointed or promoted to a regular position.

*Zambrana Torres v. González,* CT-91-1, *certified translation,* (Negrón García, J., concurring), at 2.

We agree with Justice Negrón García in that the approval of a probationary period necessarily constitutes an essential personnel transaction of the sort prohibited by the regulation. An employee needs to complete a probationary period as a prerequisite to a permanent appointment, and upon receipt of the final favorable evaluation of the probationary period, the employee is entitled to occupy the position on a permanent basis. Therefore, it is clear that the final performance evaluation of an employee at the end of his or her probationary period, if favorable, entitles that employee to fill the position permanently. The creation of an entitlement to an employment position is precisely the kind of transaction that is prohibited by the pre- and post-electoral freeze. As Justice Negrón García correctly points out, all that was left to do regarding plaintiff's appointment after the electoral freeze was to officialize her appointment, an act which was solely "symbolic, a mere formality." *Id.* at 3.

■ Plaintiff's argument that the regulation only prohibits transactions effected by the Executive Director personally must logically fail. To read the regulation in this manner would read the scope of the prohibition so narrowly as to vitiate its purpose. Furthermore, such a reading would stem from an extremely limited view of the bureaucratic realities of an administrative agency, in which the Executive Director must necessarily delegate many decisions to subordinates, among them, of course, being decisions related to personnel. As such, any personnel transactions undertaken by the Executive Director's subordinates, by his delegation, must necessarily be attributed to him.

Any other interpretation of the scope of the regulation would clearly run contrary to the merit principle which undergirds the regulation:

> The purpose of the electoral moratorium is to ban decisions involving personnel transactions, thus safeguarding the Merit Principle, and not merely decisions made by a specific person; more so when that person has delegated to others the function of evaluating an employee for purposes of making a determination regarding said employees' appointment. A decision contrary would open a dangerous loophole in such an important protection to the Merit Principle.

*Id.,* (Corrada del Río, J., concurring), at 5.

■ Furthermore, we agree with the plurality that plaintiff's qualifications and the merit of her claim of political discrimination must not play a role in our determination whether her appointment was done in violation of the pre- and post-electoral prohibition contained in the regulation. "Construing that a Final Evaluation that favorably triggers the automatic transition of an appointment from probationary to permanent is not a transaction prohibited during the pre- and post-electoral period, is tantamount to creating a dangerous exception by judicial fiat. This subverts the merit system and deeply undermines one of its most critical and sensitive areas." *Id.,* (Negrón García, J., concurring), at 4. Plaintiff's claim that her discharge was an act of political discrimination in violation of the First Amendment is independent of her due process claims; as such, her First Amendment claim is not barred by the finding that her appointment was null and void. *See, e.g., Feliciano–Angulo v. Rivera–Cruz,* 858 F.2d 40 (1st Cir.1988) (holding that finding that plaintiff did not have proprietary interest in his employment did not preclude a claim of political discrimination under the First Amendment stemming from his discharge).

We must therefore respectfully disagree with the Court's dissenting opinion, insofar as we find, upon an independent review, that *Hospital San Pablo, supra,* is clearly distinguishable on its facts from the present case. In *Hospital San Pablo,* the Court determined that the electoral moratorium on the issuance of certificates of necessity and convenience by the Secretary of Health did not preclude the holding of an interlocutory hearing in which a final determination was not made. In the present case, the final evaluation during plaintiff's probationary period was the functional equivalent of her appointment; plaintiff acquired the right to occupy the position on a permanent basis at the moment that her final favorable evaluation occurred. Contrary to the hearing in *Hospital San Pablo,* which was merely one step in a series of necessary evaluations before the Secretary of Health could issue the certificate of necessity and convenience, plaintiff's final evaluation was the final substantive step before she acquired a right to the position on a permanent basis. Such an action, which is the functional equivalent of an appointment, is clearly proscribed by the regulation and is distinguishable from that which was allowed by the Court in *Hospital San Pablo.*

We agree with Justice Corrada del Río that while

> [w]e cannot conclude that there was an intent to extend the electoral prohibition to all the stages of the process ... it is evident that there was an intent to extend this prohibition to all the stages in which the protected merit principle could be at risk, as is the final evaluation that culminates in the appointment. A conclusion to the contrary would deny the very purpose of the prohibition.

*Id.,* (Corrada del Río, J., concurring), at 10.

Our determination that plaintiff's appointment is null and void as it was in violation of the pre- and post-electoral freeze mandates that we **DISMISS** plaintiff's claim that she was discharged in violation of the Due Process Clause of the

Fourteenth Amendment, as said claim cannot be sustained because she did not have a proprietary interest in the position. As the First Circuit stated in *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 55 (1st Cir.1990), "[w]ithout some legal source other than a superior officer's unilateral and/or unauthorized actions contrary to Puerto Rico law, a government worker's pretensions to a constitutionally cognizable right in his employment must be turned aside." *See also Ramos–Melendez v. Valdejully*, 960 F.2d 4, 6 (1st Cir. 1992) ("The magistrate correctly rejected the plaintiff's claim of a deprivation of procedural due process, on the ground that the plaintiff had no proprietary interest in the [employment] position...").

### Discussion—Whether plaintiff's First Amendment claim is time-barred

■ Defendants also aver that plaintiff's claim that she was discriminatorily discharged on the basis of her political affiliation in violation of the First Amendment is time-barred. They argue that her First Amendment claim accrued on July 9, 1993, when she received an initial notification that her appointment was contrary to the merit principle and performed during the electoral moratorium. As such, defendants argue that plaintiff's claim is time-barred under the one-year statute of limitations for actions under 42 U.S.C. § 1983 because she did not file the present action until February 8, 1995.

Plaintiffs counter that while defendants are correct in their assertion that the applicable statute of limitation for plaintiff's First Amendment claim is one year, the same is not time-barred because her cause of action did not actually accrue until March 4, 1994, the day that she received her letter of dismissal. They correctly assert that March 4, 1994 "was the day when defendants finally acted against plaintiff's proprietary rights depriving her of her employment on account of her political views, affiliation and association..." (**Docket # 47, at page 20**).

Plaintiffs refer this Court to the First Circuit's holding in *Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 353 (1st Cir. 1992):

In employment discrimination cases involving wrongful discharges, the statute of limitations begins to run when the plaintiff learns of the decision to terminate his employment (even if the notice he receives is informal). It is the clarity of the notice received, not whether it is memorialized on official stationery or reduced to writing,, that determines the accrual of causes of action premised upon wrongful termination of employment under section 1983.

It is clear to the Court that the event that triggers the accrual of a cause of action for discriminatory discharge, such as the one being averred by plaintiff, is the notice of termination, such as the letter of dismissal that plaintiff received on March 4, 1994. Any previous communications that plaintiff may have received regarding the possibility that she would be discharged based upon the nullity of her appointment were preliminary, and it is undisputed that her employment was not terminated until March 4, 1994, and that she filed the present lawsuit well within the one-year statute of limitations. Pursuant to the above, defendants' argument that plaintiff's claim under the First Amendment is time-barred must be **DENIED**.

### Discussion—Whether defendants are entitled to qualified immunity

■ Defendants argue that even if the Court finds that plaintiff has stated a valid cause of action pursuant to 42 U.S.C. § 1983, that the above-captioned action should be dismissed because they are entitled to qualified immunity. They aver that under the standard of qualified immunity enunciated by the Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), they are entitled to qualified immunity because they "believed their actions were lawful in light of the clearly established law and the in-

formation they possessed in the case." (**Docket # 31, at page 23**).

Plaintiffs counter that there are genuine issues of material fact that preclude the entry of summary judgment on this issue because there is ample evidence, albeit contested by defendants, that plaintiff's dismissal based on the nullity of her appointment was merely a pretext for defendants' real motive, political discrimination. There is no controversy as to the fact that an employee's right to be free of political discrimination in employment is a clearly established right which a reasonable government employee would have known. *See Harlow,* 457 U.S. at 818–819, 102 S.Ct. 2727. What is in controversy and precludes this Court's shielding of defendants' actions with qualified immunity is whether her dismissal based on the nullity of her appointment was a mere pretext for defendants' real motive for dismissing plaintiff, her political affiliation with the former administration. We find that there is sufficient evidence on the record as to create a genuine issue of material fact and preclude the granting of qualified immunity. *See Feliciano–Angulo, supra.*

Based on the foregoing, defendants' argument that the above-captioned action should be dismissed because they are shielded by qualified immunity must be **DENIED.**

### Conclusion

Pursuant to the above discussion, defendants' motion for summary judgment (**Docket # 31**) is **GRANTED IN PART** and **DENIED IN PART.** Plaintiff's due process claim under the Fourteenth Amendment shall be **DISMISSED** as her appointment was null and void and she had not proprietary interest in her employment. Furthermore, pursuant to the Court's determination at the June 18, 1999 status conference (**Docket # 68**), plaintiff's claim under COBRA shall be **DISMISSED.** However, because plaintiff's First Amendment claim is not time-barred and is independent of her due process claim, it shall not be dismissed. Partial judgment shall be entered accordingly.

**SO ORDERED.**