*709 TEXTO COMPLETO DE LA RESOLUCION
I
La parte recurrente, Walgreen of Puerto Rico, Inc. ('’Walgreens'1), solicita la revisión de una resolución emitida el 27 de marzo de 2000 por la Secretaria del Departamento de Salud, que denegó una solicitud presentada por la recurrente para la expedición de un certificado de necesidad y conveniencia, bajo la Ley Núm. 2 de 7 de noviembre de 1975, según enmendada, 24 L.P.R.A. sees. 334 y ss. El certificado en cuestión envolvía la reubicación de una farmacia localizada actualmente en el Yauco Shopping Center del municipio de Yauco, al Centro Comercial Yauco Plaza II en el mismo municipio.
Denegamos.
II
Según se desprende del recurso, la recurrente Walgreens, es una corporación que hace negocios en Puerto Rico, operando una cadena de farmacias a través de la Isla.
Entre otros establecimientos, Walgreens cuenta con una farmacia localizada en el Centro Comercial Yauco Shopping Center, en Yauco.
El 4 de mayo de 1999, Walgreens presentó ante el Departamento de Salud una solicitud de relocalización de dicha farmacia al centro comercial Yauco Plaza II, también localizado en Yauco, el cual se encontraba en ese momento en proceso de construcción. El nuevo centro comercial se encuentra a una distancia aproximada de 1.27 millas al sureste del Yauco Shopping Center. La solicitud de Walgreens estaba apoyada por un informe preparado por la firma consultora Applied Research, Inc.
Oportunamente, varias farmacias que operan en el área solicitaron intervenir en el procedimiento para oponerse a la solicitud de Walgreens. Entre éstas, se encontraba la compañía Farmacias El Amal, quien cuenta con una farmacia localizada en un centro comercial en Yauco (Yauco Plaza), al lado opuesto de Yauco Plaza II, en la carretera estatal núm. 128, y quien solicitó intervenir en el procedimiento. Para la fecha de la solicitud de Walgreens, además, la corporación K-Mart también había solicitado la expedición de un certificado de necesidad y conveniencia para establecer una farmacia en el local a ser operado por dicha entidad en Yauco Plaza II.
Luego de otros incidentes, el 9 de septiembre de 1999 se celebró una vista ante el Oficial Examinador designado para evaluar la solicitud de Walgreens. Las partes presentaron evidencia documental y testifical en apoyo de sus respectivas posiciones, incluyendo la presentación de peritos economistas quienes declararon sobre el impacto económico de la relocalización.
A base de la prueba desfilada, el 22 de marzo de 2000, el Oficial Examinador emitió su informe, recomendando que se denegara el certificado de necesidad y conveniencia solicitado.
En su informe, el Oficial Examinador observó que la propuesta de Walgreens era para el establecimiento de una tienda de 17,920 pies cuadrados y 1,428 pies en el área de recetario. La población residente en el radio de una milla de la nueva localización se estimó en alrededor de 15,000 personas. El Oficial Examinador señaló que *710 en el área de servicio propuesta para la relocalización de Walgreens ya estaban operando nueve (9) farmacias, incluyendo la farmacia operada por El Amal, mientras que en el área de servicio actual de Walgreens sólo estaban operando la farmacia de Walgreens en el Yauco Shopping Center y otra farmacia adicional.
El Oficial Examinador concluyó que la relocalización solicitada por Walgreens tendría un efecto detrimental sobre la concentración del mercado en el área en cuestión. Al llegar a esta conclusión, dicho funcionario consideró el índice "Herfindahl-Hirshtnan", empleado por el Departamento de Salud para la evaluación de solicitudes de certificados de necesidad y conveniencia, a tenor con el Reglamento Núm. 89 aprobado por dicha agencia el 16 de octubre de 1997, para regular el proceso de concesión de este tipo de permisos bajo la citada Ley Núm. 2, y el Memorando Circular Núm. 1997-1 emitido por la Secretaria de Salud el 4 de diciembre de 1997, adoptando guías para la evaluación de estas solicitudes.
El Oficial Examinador expresó:

“Según la prueba presentada por el opositor, la relocalización propuesta tendrá efectos perniciosos sobre el mercado actual y proyectado. El mercado actual es compartido por Walgreens y Lemar, teniendo Walgreens un 87.8% de dicho mercado con 110,567 y Lemar 12.2% con 15,300 recetas. Al moverse Walgreens del mercado actual, provocará la total concentración de dicho mercado al dejar a un sólo actor. Por otro lado, en la nueva área de mercado a la cual Walgreens desea establecerse, existe un índice de concentración de 1,221.5, lo que indica que el mercado está moderadamente concentrado. Para permitir un nuevo competidor en el mercado, su entrada debería tener el efecto de reducir el índice de concentración y no aumentarlo. En este caso, la entrada de Walgreens al nuevo mercado tendrá un efecto contrario al propósito del Reglamento 89 al adoptar el criterio de concentración. Con la entrada de Walgreens al nuevo mercado, el índice de concentración aumenta en 129.2 puntos para un índice de concentración de 1,350.6. ”

La prueba demostró que la entrada de Walgreens al nuevo mercado fomentará la concentración de dicho mercado, ya que de entrada provocará un aumento en el índice de concentración de un mercado moderadamente concentrado. Con las proyecciones de ventas de Walgreens, de entrada ésta estaría acaparando el 26.2% del mercado. Con las proyecciones de ventas de Walgreens a cinco (5) años, el perito de la parte proponente no descartó que el índice de concentración del mercado continúe aumentando, y el mercado se tome de moderadamente a altamente concentrado. Esta tendencia hacia la concentración del mercado es lo que el Reglamento 89 pretende evitar, por lo que la proponente no cumple con este fundamental criterio.
El Oficial Examinador concluyó que la relocalización de la farmacia de Walgreens no era necesaria ni conveniente, por lo que recomendó que se denegara el certificado solicitado por ésta.
El 27 de marzo de 2000, mediante la resolución recurrida, la Secretaria de Salud adoptó el informe del Oficial Examinador y denegó el certificado de necesidad y conveniencia solicitado. Pocos días después, el 7 de abril de 2000, la Secretaria concedió la solicitud de K-Mart, otorgando a dicha entidad un certificado para la operación de una farmacia en su tienda de Yauco Plaza II.
Walgreens solicitó la reconsideración del dictamen de la Secretaria de Salud denegando su solicitud, la cual no fue acogida por dicha funcionaría. Insatisfecha, Walgreens acudió ante este Tribunal. 
III
En su recurso, Walgreens plantea que erró la Secretaria de Salud al denegar de manera arbitraria e irrazonable el certificado de necesidad y conveniencia solicitado. En particular, cuestiona la determinación de la agencia de que la relocalización propuesta habría de afectar adversamente la concentración del mercado en el área envuelta, a base del índice "Hetfindahl-Hirshman".
La concesión y denegación de certificados de necesidad y conveniencia por la Secretaria de Salud está *711 principalmente gobernada por la Ley Núm. 2 de 7 de noviembre de 1975, según enmendada, 24 L.P.R.A. sees. 334 y ss, y por el Reglamento Núm. 89, adoptado por el Departamento de Salud el 16 de octubre de 1997, al amparo de la primera.
Dichos preceptos facultan a la Secretaria para otorgar certificados de necesidad y conveniencia para el establecimiento de nuevas facilidades de salud, cuando ello sea necesario y conveniente para la población que dichas facilidades van a servir, siempre que no se afecten indebidamente los servicios existentes. Se contribuye así en Puerto Rico al desarrollo ordenado y adecuado de los servicios de salud. 24 L.P.R.A. see. 334; Laboratorio Clínico Instituto Central Medicina Avanzada v. Laboratorio Clínico Borinquen, Inc., 149 D.P.R. _ (1999), 99 J.T.S. 141, a la pág. 38.
Al otorgar o denegar un certificado de necesidad y conveniencia, la Secretaria de Salud no sólo concede o deniega un permiso para operar una facilidad de salud, sino que planifica el desarrollo de éstas en las distintas áreas regionales de salud. En este sentido, su dictamen afecta no sólo al peticionario, sino al área de salud de que se trate y tiene efectos generales y regionales. Laboratorio Clínico Instituto Central Medicina Avanzada v. Laboratorio Clínico Borinquen, Inc., 99 J.T.S. 141, a la pág. 40; Ruiz Hernández v. Mahiques, 120 D.P.R. 80, 88 (1987).
Se trata de una decisión personal de dicha funcionaría, que representa la culminación de un proceso evaluativo institucional que combina aspectos de reglamentación y adjudicación, y que requiere la evaluación de muchas circunstancias y factores complejos, y la ponderación de criterios diversos. Laboratorio Clínico Instituto Central Medicina Avanzada v. Laboratorio Clínico Borinquen, Inc., 99 J.T.S. 141, a las págs. 40-41; Hosp. San Pablo v. Hosp. Hnos. Meléndez, 123 D.P.R. 720, 732-733 (1989).
El art. 3 de la Ley establece los criterios generales a ser considerados por la Secretaria de Salud en su evaluación de una solicitud de certificado de necesidad y conveniencia. Estos incluyen: (1) la relación entre lá transacción para la cual se solicita el certificado y el plan de desarrollo de servicios a largo plazo, si alguno, del solicitante; (2) la necesidad actual y proyectada que tiene la población a ser afectada por la transacción contemplada de los servicios que se proveerán; (3) la existencia de alternativas a la transacción para la cual se solicita el certificado o la posibilidad de proveer ios servicios contemplados de manera más eficiente o menos costosa que la propuesta por el solicitante; y (4) la relación entre el sistema de salud operante en el área y la transacción propuesta. 24 L.P.R.A. sec. 334b.
El precepto añade que cuando se trata de una solicitud para el ofrecimiento de servicios de salud, deberán considerarse también: (a) la disponibilidad de recursos humanos y económicos para el rendimiento eficiente de los servicios; (b) el impacto que la forma de proveer los servicios tendrá sobre las necesidades de entrenamiento clínico que puedan tener los profesionales de salud del área donde los servicios habrán de prestarse; y (c) el porciento de la población del área a ser servida que tendrá acceso a los servicios propuestos. Id.
El Art. VI del Reglamento Núm. 89, por su parte, establece guías generales adicionales para la evaluación de solicitudes de expedición de los certificados. Entre éstas se encuentran el "nivel de competitividad y de eficiencia operacional de las facilidades de salud existentes en el área de servicio de la acción propuesta" y el "nivel de concentración existente en el área de servicio de la acción propuesta y la medida en que un incremento en la oferta estimule la competencia en cuyo caso se podría favorecer la acción propuesta."
El Reglamento define, en su Art. HI, el área de servicio a ser considerada en el caso particular de cada facilidad de salud propuesta. En el caso particular de una farmacia, dicho artículo establece que el área de servicio a considerar en la evaluación de la solicitud será el "área equivalente a una milla radial medida desdé el centro de la estructura propuesta como el área de servicio básica".
En la situación de autos, el Departamento de Salud concluyó que la propuesta de la recurrente Walgreens no *712 debía ser concedida, ya que la relocalización propuesta habría de reducir la concentración de servicios en el área atendida por la farmacia existente, así como aumentar irrazonablemente la concentración de servicios en el área de Yauco Plaza II. Carecemos de elementos de juicio para intervenir con dicha determinación.
Nuestra facultad de revisión en el campo administrativo, según se conoce, es limitada. Según la doctrina establecida por el Tribunal Supremo de Puerto Rico, las decisiones de los organismos administrativos han de recibir deferencia por los tribunales, presumiéndose su corrección. La revisión judicial en estos casos, se circunscribe a determinar si la agencia en el caso particular actuó arbitraria, ilegalmente, o de manera tan irrazonable que su actuación constituyó un abuso de discreción. Municipio de San Juan v. Junta de Calidad Ambiental, 149 D.P.R. _ (1999), 99 J.T.S. 152, a la pág. 125; Franco Dominicci v. Departamento de Educación, 148 D.P.R. _ (1999), 99 J.T.S. 108, a la pág. 1,250; Misión Industrial de Puerto Rico v. Junta de Planificación de Puerto Rico, 146 D.P.R. _ (1998), 98 J.T.S. 79, a la pág. 1,161; Reyes Salcedo v. Policía de Puerto Rico, 143 D.P.R. _ (1997), 97 J.T.S. 58, a la pág. 959; Henríquez v. Consejo de Educación Superior, 120 D.P.R. 194, 210 (1987); Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692, 699 (1975).
Por el contrario, si las interpretaciones de la agencia especializada son razonables y consistentes con el propósito legislativo que inspiran los estatutos directivos, el tribunal debe abstenerse de intervenir con las mismas. Costa Wood v. Caguas Expressway Motors, Inc., 149 D.P.R. _ (2000), 2000 J.T.S. 11, a la pág. 489; Misión Industrial de Puerto Rico v. Junta de Planificación de Puerto Rico, 98 J.T.S. 79, a las págs. 1, 160-61; Comisionado de Seguros de Puerto Rico v. Antilles Insurance Company, 145 D.P.R. _ (1998), 98 J.T.S. 38, a la pág. 764; Rivera Rentas v. A & C Development Corp., 144 D.P.R. _ (1997), 97 J.T.S. 143, a la pág. 344.
La intervención judicial con las actuaciones administrativas, de este modo, ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado, (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba y (3) si las conclusiones de derecho del organismo administrativo son correctas. 3 L.P.R.A. see. 2175; Puerto Rico Telephone Company v. Junta Reglamentadora de Telecomunicaciones de Puerto Rico, 151 D.P.R. _ (2000), 2000 J.T.S. 98, a la pág. 1,266; Misión Industrial de Puerto Rico v. Junta de Planificación de Puerto Rico, 98 J.T.S. 79, a la pág. 1,159; Rivera Rentas v. A & C Development Corp., 97 J.T.S. 143, a la pág. 344.
La norma reiterada es que los tribunales no deben intervenir con las determinaciones de hechos formuladas por una agencia administrativa si están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad. Asociación de Vecinos del Hospital San Jorge v. United Medical Corporation, 150 D.P.R. _ (2000), 2000 J.T.S. 21, a las págs. 560-61; Domínguez Talavera v. Caguas Expressway Motors, 148 D.P.R._(1999), 99 J.T.S. 85, a las págs. 1,067-68; T-JAC, Inc. (Wal-mart Caguas.) v. Caguas Centrum Limited Partnership, S.E., 148 D.P.R. _, 99 J.T.S. 60, a la pág. 884; Associated Insurance Agencies, Inc. v. Comisionado de Seguros de P.R., 144 D.P.R._(1997), 97 J.T.S. 142, a la pág. 332.
La evidencia sustancial para sostener la actuación administrativa es aquella que una mente razonable puede aceptar como adecuada para sostener una conclusión. La intervención del Tribunal está limitada a evaluar si la decisión de la agencia es razonable y no si hizo una determinación correcta de los hechos ante su consideración. Si existe más de una interpretación razonable de los hechos, los tribunales sostendrán la decisión de la agencia y no sustituirán su criterio por el de ésta. Al revisar las determinaciones de hecho, la evidencia debe ser considerada en su totalidad. Asociación de Vecinos del Hospital San Jorge v. United Medical Corporation, 2000 J.T.S. 21, a la pág. 561; Associated Insurance Agencies, Inc. v. Comisionado de Seguros de P.R., 97 J.T. S. 142, a las págs. 332-333; Hilton Hotels International v. Junta de Salario Mínimo, 74 D.P.R. 670, 687 (1953).
El art. 12 de la Ley Núm. 2 dispone, sobre este particular, que las determinaciones de hecho del Secretario del Departamento sostenidas por evidencia, "serán concluyentes". 24 L.P.R.A. sec. 334f-7.
*713 En el caso de autos, hemos examinado la decisión recurrida, a la luz de los argumentos levantados en el recurso y los documentos sometidos por la parte recurrente. Entendemos que la decisión de la Secretaria de Salud efectivamente está sostenida por la evidencia sustancial en el récord ante dicha agencia,* particularmente. por la evidencia pericial desfilada. En estas circunstancias, declinamos intervenir con la decisión impugnada.
Debe tenerse en cuenta que la facultad de la Secretaria para interpretar los criterios aplicables a este tipo de decisión es sumamente amplia, y que dicha funcionada tiene "la discreción necesaria para sopesar y evaluar dichos criterios en aquella forma y manera que mejor facilite la implantación de la Ley Número 2 del 7 de noviembre de 1975, según enmendada, y la política pública del Departamento de Salud", Art. VI del Reglamento Núm. 89; Laboratorio Clínico Instituto Central Medicina Avanzada v. Laboratorio Clínico Borinquen, Inc., 99 J.T.S. 141, a la pág. 41.
La recurrente plantea que la Secretaria de Salud actuó arbitrariamente al utilizar el llamado índice de concentración "Hetfindahl-Hirshman" como criterio exclusivo al evaluar su solicitud de relocalización, no estando autorizada la utilización de dicho índice en el Reglamento Núm. 89.
En efecto, el art. VI(7) del Reglamento Núm. 89 establece, entre otros criterios generales para la evaluación de este tipo de solicitud, ”[e]l nivel de concentración existente en el área de servicio de la acción propuesta y la medida en que un incremento en la oferta estimule la competencia...". El Reglamento, sin embargo, no dispone el método específico a utilizarse para medir este parámetro.
Mediante su Memorando Circular 1997-1 del 4 de diciembre de 1997, la Secretaria de Salud adoptó la utilización del índice de concentración "Hetfindahl-Hirshman" para estos fines.
Este índice fue desarrollado por Orris C. Herfindahl en 1959 para medir concentración industrial en la industria de acero de los Estados Unidos y posteriormente fue adoptado por el Departamento de Justicia de los Estados Unidos, bajo las leyes antimonopolísticas, para evaluar fusiones y adquisiciones de empresas. Véase, Alfredo González Martínez & José Alameda Lozada, Indice Herfindahl-Hirshman: Instrumento Potencial Para Medir el Ambiente de Competencia, Unidad de Investigaciones Económicas, Departamento de Economía de la Universidad de Puerto Rico, octubre 1999, págs. 4-5.
El índice es el valor de la suma de las participaciones al cuadrado de cada empresa en un mercado en cuestión, multiplicado por un factor de 10,000. El resultado es una cifra entre 0 y 10,000, que mide la participación en el mercado de una entidad particular. A menor el valor del índice, menor concentración de mercado y vice-versa. Un valor de 10,000 representa un monopolio absoluto.
Los valores del índice indican niveles de concentración de la empresa en el mercado o industria en cuestión, los cuales se agrupan en tres clasificaciones principales. Un valor de 1,000 o menos representa una ausencia de concentración. Una cifra de 1,000 a 1,800 representa una participación "moderadamente concentrada", mientras que un valor de más de 1,800 representa un nivel de concentración de "altamente concentrado".
En el presente caso, utilizando este parámetro, la agencia entendió que el traslado de la farmacia Walgreens habría de tener un efecto adverso sobre los servicios prestados, tanto en el área atendida actualmente por la farmacia existente de dicha parte en el Yauco Shopping Center, como en la nueva área que atenderá Yauco Plaza II.
El Oficial Examinador concluyó que el traslado de la facilidad provocaría un monopolio ("total concentración") en el área de la farmacia existente, ya que la misma quedaría atendida por una sola farmacia (Lemar). Consideró, además, que de acuerdo a las proyecciones. Walgreens habría de desarrollar una concentración alta en el nuevo mercado, en detrimento de sus competidoras.
*714 Walgreens impugna estas determinaciones, atacando el uso de esta metodología.
A nuestro juicio, el empleo del índice "Herfindahl-Hirshman" en estos procedimientos no está libre de dificultades. Aunque el mismo parece proveer un parámetro objetivo de evaluación, lo cierto es que el peso que pueda merecer dicha variable dependerá en gran medida de la interpretación y selección de los datos que se utilicen para llegar al resultado cuya razonabilidad se esté considerando.
Tenemos la impresión, en este sentido, que dicho método fue desarrollado para medir participación en mercados más amplios y/o bien definidos. Es evidente, sin embargo, que en una jurisdicción de extensión territorial relativamente pequeña, como Puerto Rico, los ciudadanos tienen acceso rápido a las facilidades comerciales de otros municipios para el consumo de cualquier bien o servicio y, de hecho a menudo acostumbran así hacerlo. En esas circunstancias, cualquier definición de un mercado "local" puede tener un carácter arbitrario, lo que en numerosos casos restaría utilidad al referido índice.
En el presente caso, por ejemplo, el Reglamento Núm. 89 requiere que se considere, como el área pertinente de servicio, aquella dentro de una milla radial de la facilidad propuesta. Ello implica asignar la farmacia existente de Walgreens, que está a una distancia de 1.27 millas del lugar propuesto, a un mercado distinto al que será atendido por Yauco Plaza II, a pesar de que, en la práctica, muy bien podría ser el caso que ambas localidades a menudo sean visitadas por las mismas personas.
Cabe señalar, por otro lado, que el Memorando Circular 1997-1 del 4 de diciembre de 1997, de la Secretaria de Salud, fue adoptado sin seguir el procedimiento establecido por la Ley de Procedimiento Administrativo Uniforme para la modificación de un Reglamento, 3 L.P.R.A. sees. 2121 y ss., por lo que no estimamos que dicho parámetro pueda considerarse vinculante. Véase, Soto v. Srio. de Justicia, 112 D.P.R. 477, 499-500 (1982); García v. Adm. del Derecho al Trabajo, 108 D.P.R. 53, 56-57 (1978); véase, además, Walgreens of Puerto Rico, Inc. v. Hon. Secretaria de Salud y Puerto Rico Drug, Inc., KLRA-99-00532 (resolución de 5 de mayo de 2000).
Consideramos, a la luz de las anteriores observaciones, que el referido índice "Herfindahl-Hirshman" no debe ser utilizado en todo caso para denegar, de manera automática y con abstracción de otras circunstancias, una solicitud de certificado de necesidad y conveniencia. Dicho parámetro puede ser considerado en conjunto con otra evidencia presentada ante la agencia y recibir el peso que la Secretaria estime, a la luz de las interpretaciones y testimonios ofrecidos por los peritos presentados por las partes. Pero el mismo, creemos, está muy lejos de constituir un estándar único y definitivo para una evaluación razonable de este tipo de solicitudes.
No obstante lo anterior, no estimamos que en el presente caso la determinación de la agencia de no autorizar la relocalización de la farmacia de Walgreens constituya una actuación irrazonable.
Según indicado, de forma esencialmente coetánea a su denegatoria de la solicitud de Walgreens, la Secretaria de Salud concedió a K-Mart un certificado para la operación de una farmacia en el mismo centro comercial, determinación que en este día estamos sosteniendo. No creemos irrazonable que ante dos solicitudes competitivas, la agencia se hubiera inclinado por admitir aquella que implicaba el establecimiento de una facilidad nueva, y no el traslado de una facilidad existente. Dicha decisión tiende a ampliar el número de proveedores en el mercado, lo que, a nuestro juicio, resulta un resultado legítimo y razonable, dentro de la política perseguida por la Ley Núm. 2.
La decisión de la Secretaria de Salud en este caso también está apoyada en la prueba pericial sometida por la parte opositora. Aunque una porción significativa de dicha prueba está asociada al empleo del índice "Herfindahl-Hirshman", sobre lo cual hemos admitido muchas de las reservas argumentadas por Walgreens, entendemos que el testimonio en cuestión podía ser considerado por la Secretaria, particularmente en la medida en que el mismo expresaba que el traslado de la farmacia de Walgreens habría de tener un efecto nocivo sobre *715 el mercado.
Debe recordarse que la decisión de la agencia de denegar el certificado en cuestión, implica un juicio de-política pública. No es nuestra función sustituir el criterio de la Secretaria de Salud, en ausencia de un claro abuso de discreción. La decisión del organismo administrativo nos merece deferencia. Rodríguez Rosa. v. Méndez & Co., 147 D.P.R. _ (1999), 99 J.T.S. 28, a la pág. 695; Aponte López v. Figueroa Orozco, 146 P.P.R. _ (1998), 98 J.T.S. 123, a las págs. 104-5; Misión Industrial de Puerto Rico v. Junta de Planificación de Puerto Rico, 98 J.T.S. 79, a-las págs; 1,160-61. Compárese, Asociación de Vecinos del Hospital San Jorge v. United Medical Corporation, 2000 J.T.S. 21, a la pág. 561 ; RBR Construction, S.E. v. Autoridad de Carreteras y Transportación de P.R., 149 D.P.R. _ (2000), 2000 J.T.S. 7, a la pág. 468.
Por los fundamentos expresados, se deniega el recurso solicitado. El Juez Ortiz Carrión disiente sin opinión escrita.
Lo pronunció el Tribunal y lo certifica la señora Subsecretaría General.
Gladys E. Ortega Ramírez
Subsecretaría General
ESCOLIO 2001 DTA 31
1. La concesión del certificado a K-Mart ha sido recurrida ante este foro por Farmacias el Amal mediante otro recurso separado ante este panel, KLRA-2000-00423. En el día de hoy emitimos resolución denegando dicho recurso.
Walgreens ha solicitado la consolidación de ambos casos, pero hemos entendido que ello resulta innecesario.