# 2006 DTA 107

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL III**

HOSPITAL ESPAÑOL AUXILIO MUTUO DE PUERTO RICO, INC.
Proponente-Recurrente

v.

HOSPITAL GENERAL MENONITA
Proponente

DEPARTAMENTO DE SALUD
Recurrido

Núm. KLRA-05-00821

San Juan, Puerto Rico, a 15 de agosto de 2006

Panel integrado por su presidenta, la Juez Bajandas Vélez,
el Juez Aponte Hernández y el Juez Vivoni del Valle

Aponte Hernández, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El 12 de septiembre de 2005, la Secretaria de Salud, Hon. Rosa Pérez Perdomo, emitió resolución mediante la cual desestimó las solicitudes para Certificados de Necesidad y Conveniencia presentadas por el Hospital General Menonita y por el Hospital Español Auxilio Mutuo de Puerto Rico, Inc. Dichas instituciones proponían, en sus respectivas solicitudes presentadas por separado, ██ el establecimiento de un programa de salud en el hogar y de un laboratorio de tomografía computadorizada por emisión de positrones (por sus siglas en inglés, PET/CT).

Ante nos recurre el Hospital Español Auxilio Mutuo de Puerto Rico, Inc. y nos solicita que revoquemos dicha resolución en cuanto a la desestimación de su solicitud de Certificado de Necesidad y Conveniencia para el establecimiento de un laboratorio PET/CT en las facilidades del hospital.

Por los fundamentos que expondremos, se confirma la resolución recurrida.

### I

Surge de los escritos ante nuestra consideración, que el 8 de febrero de 2005, el Hospital Auxilio Mutuo (en adelante, Auxilio Mutuo) presentó ante el Departamento de Salud una solicitud de Certificado de Necesidad y Conveniencia (en adelante, CNC) para establecer en las facilidades del hospital un laboratorio PET/CT. En su solicitud, alegó que operaba como una organización para el mantenimiento de la salud (en adelante, HMO), según los parámetros del Artículo I, inciso (x) de la Ley Núm. 2 de 7 de noviembre de 1975, según enmendada (en adelante, Ley Núm. 2), 24 L.P.R.A. sec. 334, inciso (x). ██ Como tal, sostuvo que procedía la "concesión automática" del CNC, una vez estableciera el cumplimiento con los requisitos estatuidos en el Artículo 6 de la Ley Núm. 2, supra, 24 L.P.R.A. sec. 334f, para facilidades controladas por otras o extensiones de la misma, así como con el Artículo VIII del reglamento creado en virtud de dicha ley, Reglamento del Secretario de Salud Núm. 112 para Regir el Proceso de Evaluación de Solicitudes para el Otorgamiento de Certificados de Necesidad y Conveniencia, aprobado el 20 de febrero de 2004 (en adelante, Reglamento Núm. 112).

Por su parte, el Hospital General Menonita (en adelante, Menonita) también presentó una solicitud de CNC reclamando que opera como un HMO e igualmente solicitó la "concesión automática" del permiso para el desarrollo de un programa de servicios de salud en el hogar, a tenor con las citadas disposiciones. Ambos proponentes comparecieron representadas ante el Departamento de Salud con la misma representación legal.

El Departamento de Salud denegó ambas solicitudes, al concluir que las disposiciones citadas por los proponentes no disponen para la "concesión automática" o "compulsoria" de un CNC para las facilidades que operan como un HMO. Los proponentes solicitaron reconsideración. En su escrito, al argumentar que operan como un HMO, solicitaron una vista evidenciaria para desfilar la prueba correspondiente al cumplimiento con los requisitos del Artículo 6, supra, y el Artículo VIII del Reglamento Núm. 112, supra.

Se publicaron los correspondientes edictos, en los que se anunció la intención de Menonita y Auxilio Mutuo y se solicitó la participación en la vista pública de las personas interesadas, así como de la ciudadanía en general. Luego de la publicación de los edictos, se señaló la vista administrativa para el 28 de julio de 2005. Posteriormente, a petición de los proponentes, la vista fue pospuesta para el 12 de agosto de 2005.

La vista administrativa se celebró ante la Oficial Examinadora Mercedes M. Reyes. Toda vez que tanto el Auxilio Mutuo como Menonita reclamaron que ofrecerían el servicio propuesto como HMO y como tal

procedía la aprobación del CNC, la Oficial Examinadora expresó que se consolidaban ambas propuestas a los fines de determinar si procedía evaluar las solicitudes según instadas. Indicó, además, que en la eventualidad de que se determinase que los servicios propuestos serían ofrecidos como parte de un HMO, se señalarían vistas separadas para que cada proponente, individualmente, presentara evidencia a los fines de establecer que su propuesta cumplía con los requisitos estatuidos para el tipo de facilidad solicitada.

No obstante, iniciada la argumentación de los proponentes, y a preguntas de la Oficial Examinadora, el representante legal de las proponentes explicó que las facilidades propuestas estarían disponibles tanto para los participantes del HMO como para el público externo que utiliza el hospital. Indicó, que las facilidades propuestas complementarían los servicios del hospital. En vista de ello, el 16 de agosto de 2005, la Oficial Examinadora suscribió *Minuta y Resolución*, en la cual concluyó que *"a base de la información provista por el propio abogado de los proponentes de que el servicio propuesto para los participantes de sus HMO será provisto a través de las facilidades de hospitales, no será exclusivo para sus miembros, y estará disponible para todos los clientes del hospital, el servicio será brindado a base de su **CNC de Hospital**, y como tal debe solicitarse".* (Énfasis original). ▮ Aclaró que sólo cuando el servicio propuesto está dirigido a servir exclusivamente a la matrícula del HMO es que procedía la exención reclamada por los proponentes. A tenor con lo anterior, recomendó desestimar ambas propuestas.

El 12 de septiembre de 2005, la Secretaria de Salud emitió *Resolución*, mediante la cual acogió la determinación de la Oficial Examinadora y desestimó ambas propuestas. Los proponentes presentaron solicitud de reconsideración la cual, ante la inacción de la agencia, se entendió rechazada de plano.

Inconforme, oportunamente uno de los proponentes, el Auxilio Mutuo, acudió ante nos señalando que:

*"Incurrió en error la Secretaria de Salud y actuó contrario a derecho al consolidar las propuestas de referencia en un mismo procedimiento.*

*Incurrió en error la Secretaria de Salud al no conceder el Certificado de Necesidad y Conveniencia a la proponente conforme a derecho.*

*Incurrió en error la Secretaria de Salud y actuó contrario a derecho al desestimar sumariamente la solicitud sin ofrecer la oportunidad de una vista para presentar su prueba, lo cual constituye una violación a las disposiciones del debido procedimiento de ley."*

En cuanto al primer señalamiento, alega que no procedía consolidar las propuestas en un mismo procedimiento debido a que éstas giran en torno al establecimiento de facilidades de salud distintas; pues la propuesta de Auxilio Mutuo está inmersa bajo la clasificación de facilidad radiológica; mientras que la de Menonita pertenece a la categoría de programa de servicios de salud en el hogar. En relación con el segundo señalamiento, expone que para reclamar la exención de HMO ni la Ley Núm. 2, ni el Reglamento Núm. 112, requieren que se establezca que el servicio propuesto estaría disponible exclusivamente a la matrícula del HMO. Por último, señala que la desestimación sumaria de su solicitud lo privó de su derecho a presentar evidencia en apoyo de su propuesta.

En oposición, el Departamento de Salud, representado por la Oficina del Procurador General, aduce que el foro administrativo dispuso la consolidación de las propuestas sólo a los efectos de determinar si las proponentes operaban como un HMO y si como tal debían atenderse sus solicitudes de CNC. Señaló, además, que la determinación de la agencia de evaluar la propuesta del Auxilio Mutuo como de Hospital y no como HMO es cónsona con el Artículo 6 de la Ley Núm. 2, 24 L.P.R.A sec. 334f. Finalmente, sostiene que no era necesario celebrar una vista adjudicativa, en vista de que la determinación de la agencia estuvo fundamentada en una admisión de hecho de la parte recurrente. Razona que se trata de una desestimación sin perjuicio, pues la

propuesta puede y debe ser presentada nuevamente como un CNC de hospital.

## II

La Ley de Certificados de Necesidad y Conveniencia, Ley Núm. 2 del 7 de noviembre de 1975 según enmendada, 24 L.P.R.A. sec. 334 *et seq.*, establece que como requisito para el establecimiento y operación de una facilidad de salud será necesario poseer un CNC. ■ A través de estos certificados, la Asamblea Legislativa ha intentado regular la planificación ordenada de algunas facilidades y servicios de salud para que, de este modo, se puedan atender adecuadamente las necesidades de salud de la población, controlar los costos de los servicios de salud y velar porque éstos se presten en aquellos núcleos poblacionales donde sean necesarios. *Asoc. Fcias. Com. v. Depto. de Salud*, 156 D.P.R. 105 (2002). El Secretario, al otorgar o denegar un CNC, no sólo concede o deniega un permiso para operar una facilidad de salud, sino que planifica el desarrollo de éstas en las distintas áreas regionales de salud. ■ *Ruiz Hernández v. Mahiques*, 120 D.P.R. 80, 89 (1987).

Dispone, además, que será el Secretario del Departamento quien establezca mediante reglamento el procedimiento para el recibo y evaluación de solicitudes de dichos CNC. 24 L.P.R.A. sec. 334f-2. Es por ello que actualmente está en vigor el Reglamento Núm. 112 para Regir el Proceso de Evaluación de Solicitudes para el Otorgamiento de Certificados de Necesidad y Conveniencia promulgado por el Secretario del Departamento el 20 de febrero de 2004. La decisión de otorgar o denegar un CNC surge de un proceso evaluativo institucional que culmina con la decisión personal del Secretario de Salud. *Lab. Inst. Med. Ava. v. Lab. C. Borinquen*, 149 D. P.R. 121 (1999); *Hosp. San Pablo v. Hosp. Hnos. Meléndez*, 123 D.P.R. 720 (1989). Se trata de un proceso que requiere la evaluación de muchas circunstancias y factores complejos, y la ponderación de varios criterios diversos. *Id.* Tal y como indica el Tribunal Supremo, de lo anterior es evidente que la decisión final del Secretario de Salud apareja el uso de su discreción. *Id.* Dicha decisión no puede tomarse sin antes sopesar numerosos elementos y pasar juicio sobre distintas consideraciones, para entonces determinar qué es lo más que conviene al interés general y al bien común. *Id.*

El reconocimiento reglamentario de la discreción del Secretario de Salud para conceder o denegar un CNC merece la deferencia del Tribunal por la norma doctrinal de que la interpretación que una agencia de a su ley orgánica amerita gran respeto y consideración judicial. *Asoc. Médica de P.R. v. Cruz Azul*, 118 D.P.R. 669, 678 (1987); *Tormos & DACO v. F.R. Technology*, 116 D.P.R. 153, 160 (1985); *Quevedo Segarra v. J.A.C.L.*, 102 D. P.R. 87, 96 (1974). Además, una interpretación contextual de la Ley Num. 2, *supra*, revela que el legislador dejó en manos del Secretario de Salud la determinación de conceder o denegar los certificados requeridos, sujeto a unas guías y criterios que aparejan un ámbito de discreción. *Lab. Inst. Med. Ava. v. Lab. C. Borinquen*, *supra*.

Ello está acorde con la norma de derecho claramente establecida de que en el proceso de revisión de una decisión emitida por una agencia administrativa, los tribunales de apelación han de concederle gran peso y deferencia a la decisión administrativa, en vista de la experiencia y conocimiento especializado de la agencia. *Pacheco, Rodríguez v. Est. de Yauco*, 160 D.P.R. ___ (2003), **2003 J.T.S. 150**, pág. 210; *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 D.P.R. 70, 75-6 (2000); *Agosto Serrano v. F.S.E.*, 132 D.P.R. 866, 879 (1993). Debemos también tener presente que los procedimientos y decisiones de un organismo administrativo tienen a su favor una presunción de corrección y regularidad, la cual debe ser respetada mientras la parte que la impugne no produzca suficiente evidencia para derrotarla. *Henríquez v. Consejo de Educación Superior*, 120 D.P.R. 194, 210 (1987); *M. & B.S., Inc. v. Departamento de Agricultura*, 118 D.P.R. 319, 331 (1987). Por eso, los tribunales debemos ser cautelosos al intervenir con las determinaciones de organismos administrativos. *Viajes Gallardo v. Clavell*, 131 D.P.R. 275, 289-290 (1992).

## III

Auxilio Mutuo alega que no procedía consolidar en un mismo procedimiento su propuesta con la de Menonita, debido a que éstas giran en torno al establecimiento de facilidades de salud distintas. Argumenta que

su propuesta se clasifica como facilidad radiológica, mientras que la de Menonita pertenece a la categoría de programa de servicios de salud en el hogar.

En cuanto a este asunto, es preciso destacar que la consolidación dispuesta sólo se hizo a los fines de determinar si los proponentes cualificaban o no como un HMO. El Artículo V del Reglamento Núm. 112, el cual provee para la consolidación de las solicitudes, permite tal gestión. A estos efectos, dispone que:

*"14. Aquellas solicitudes de Certificado de Necesidad y Conveniencia para facilidades de salud del mismo tipo, que se hayan presentado en S.A.R.A.F.S. dentro de un término de tres (3) meses una de la otra, se consolidarán para ser evaluadas en una vista administrativa conjunta, siempre y cuando el curso del proceso de evaluación subsiguiente de estas solicitudes no se haya distanciado de tal forma que la consolidación de las mismas produzca un atraso en el trámite y perjuicio a una de las partes. Esto no impedirá que se puedan consolidar otras solicitudes, si se demuestra que la consolidación es conveniente para la evaluación de las mismas y el propósito fundamental de lograr una planificación ordenada de las facilidades de salud."* (Énfasis suplido)

Ante el hecho de que tanto Auxilio Mutuo, como Menonita, presentaron sus solicitudes de CNC alegando que ofrecerían el servicio propuesto como parte de un HMO, la Oficial Examinadora consolidó ambas propuestas sólo para fines de evaluación al respecto. La Oficial Examinadora no consolidó las propuestas para considerar si procedía conceder la facilidad solicitada por cada proponente. De hecho, ésta especificó que en la eventualidad de que se determinase los servicios propuestos serían ofrecidos como parte de un HMO, se señalarían vistas separadas para que cada proponente, individualmente, presentara evidencia a los fines de establecer que su propuesta cumplía con los requisitos estatuidos para el tipo de facilidad solicitada. Así, el tipo de facilidad, radiológica (Auxilio Mutuo) o programa de servicios de salud en el hogar (Menonita), no es un aspecto a considerar para determinar si la solicitud presentada se formuló adecuadamente; es decir, como hospital o como HMO.

**IV**

Auxilio Mutuo sostiene que para reclamar la exención de HMO ni la Ley Núm. 2, ni el Reglamento Núm. 112, requieren que se establezca que el servicio propuesto estaría disponible exclusivamente a la matrícula del HMO.

El Artículo 3 de la Ley Núm. 2, 24 L.P.R.A. 334b, establece los criterios para expedir o denegar un CNC. Entre dichos criterios se encuentran los siguientes:

*"(1) La relación entre la transacción para la cual se solicita el certificado y·el plan de desarrollo de servicios a largo plazo, si alguno, del solicitante.*

*(2) La necesidad actual y proyectada que tiene la población a ser afectada por la transacción contemplada de los servicios que se proveerán mediante la misma.*

*(3) La existencia de alternativas a la transacción para la cual se solicita el certificado o la posibilidad de proveer los·servicios contemplados de manera más eficiente o menos costosa que la propuesta por el solicitante.*

*(4) La relación entre el sistema de salud operante en el área y la transacción propuesta.*

*(5) En el caso específico de solicitantes de certificados de necesidad y conveniencia para el ofrecimiento de servicios de salud, el Secretario deberá considerar también los siguientes factores:*

*a) La disponibilidad de recursos humanos y económicos para el rendimiento eficiente de esos servicios.*

*(b) El impacto que la forma de proveer los servicios tendrá sobre las necesidades de entrenamiento clínico que puedan tener los profesionales de salud del área en donde los servicios habrán de prestarse.*

*(c) El por ciento de la población del área a ser servida que tendrá acceso a los servicios propuestos. El Secretario deberá exigir que la solicitud indique el tiempo que el solicitante necesitará para hacer disponible el servicio o equipo objeto de la petición o realizar el gasto objeto de la transacción."*

Además de los criterios esbozados en el Artículo 3 de la citada Ley Núm. 2, el Artículo VI del Reglamento Núm. 112 provee unas guías generales para la evaluación de solicitudes de esta naturaleza.

Ahora bien, si la entidad proponente que solicita el CNC opera como un HMO, el Artículo 6 de la Ley Núm. 2, 24 L.P.R.A. sec. 334f, dispone que:

*"Si una organización para el mantenimiento de la salud o una facilidad de salud controlada directa o indirectamente por ésta, solicita un certificado de necesidad y conveniencia, el Secretario deberá aprobarlo si la transacción contemplada es indispensable para cubrir las necesidades de la matrícula actual y potencial de la misma y si la organización para el mantenimiento de la salud no puede proveer a través de sus facilidades, sus servicios de salud a un costo razonable consistente con la manera de operar de la organización por largos períodos de tiempo y con médicos y profesionales de la salud asociados con la facilidad sin llevar a cabo la transacción contemplada."*

El Artículo VIII del Reglamento Núm. 112 recoge la anterior disposición, estableciendo en lo aquí pertinente que:

*"1- Toda organización para el mantenimiento de la salud (HMO) deberá solicitar y obtener un Certificado de Necesidad y Conveniencia para llevar acabo cualesquiera de las actividades descritas en el Artículo III de este Reglamento **excepto** que tales actividades sean a favor de una facilidad de salud que se dedica principalmente a ofrecer servicios a pacientes institucionalizados.*

*2- Cuando una organización para el mantenimiento de la Salud (HMO) o una facilidad de salud controlada directa o indirectamente por ésta, solicita un Certificado de Necesidad y Conveniencia, éste deberá ser aprobado, si la transacción contemplada es indispensable para cubrir las necesidades de la matrícula actual y potencial de la organización y ésta no puede proveer los servicios de salud por largos períodos de tiempo y con médicos asociados con la facilidad, a un costo razonable y consecuente con la manera de operar de la organización.*

*[...]"*. (Énfasis suplido)

Es decir, si la entidad proponente que solicita el CNC es un HMO, sólo le corresponde establecer ante la agencia que cumple con los criterios de necesidad dispuestos en el Artículo 6 y la disposición reglamentaria citada. No tiene que demostrar que cumple con los criterios contenidos en el Artículo 3, los cuales son requeridos a cualquier otro proveedor de servicios de salud. Adviértase, que los criterios de necesidad del Artículo 6 están estrictamente vinculados a la necesidad de que el proponente demuestre que la facilidad solicitada opera como un HMO. No basta con simplemente formular la petición como un HMO. Los criterios para un HMO como proponente están dirigidos a evaluar la necesidad del servicio propuesto a los fines de mantener la operación del HMO. Mientras, los criterios requeridos por el Artículo 3 de la Ley Núm. 2 están dirigidos a determinar la necesidad y viabilidad del servicio propuesto así como el impacto que el desarrollo que la facilidad propuesta tendrá en las facilidades existentes. Esto último constituye el fundamento por el cual, al

considerar una solicitud del CNC, el Reglamento Núm. 112 provee para la participación, como opositores o interventores, de las facilidades operantes en el área de servicio de la facilidad propuesta. Véase, Artículo V del Reglamento Núm. 112.

En vista de que el servicio propuesto por el Auxilio Mutuo estará disponible tanto para los participantes del HMO como para la clientela general del hospital, que no participa del HMO, el CNC debía ser solicitado como hospital y no como HMO, tal y como resolvió la agencia recurrida. En tal virtud, correspondía que demostrara el cumplimiento con los criterios dispuestos en el Artículo 3.

## V

Por último, Auxilio Mutuo señala que la Secretaria de Salud incidió al no celebrar una vista para que dicha parte presentara su prueba a los fines de sostener la procedencia de su solicitud.

A tenor con lo dispuesto en el Artículo 14 de la Ley de Procedimiento Administrativo Uniforme (en adelante, LPAU), 3 L.P.R.A. sec. 2151, cuando por disposición de una ley, regla o reglamento una agencia deba adjudicar formalmente una controversia, los procedimientos deberán regirse por las disposiciones de la LPAU.

El Reglamento Núm. 5467, Reglamento del Secretario de Salud para Regular los Procedimientos Adjudicativos en el Departamento de Salud y sus Dependencias, aprobado el 27 de agosto de 1996, Artículo IX, inciso (g), reconoce la autoridad del oficial examinador para *disponer de instancias procesales o asuntos similares, incluyendo pero sin limitarse a denegar de plano mociones de desestimación o disposición sumaria del procedimiento*. En consecuencia, no se requiere la celebración de una vista para decretar la desestimación sumaria del procedimiento.

En el presente caso, la agencia recurrida celebró una vista para que los proponentes demostraran que operaban como un HMO. Durante la misma, la representación legal de éstos señaló que el servicio propuesto no sería para uso exclusivo de sus miembros, sino que estaría disponible para el público externo que utiliza el hospital. Ante tal declaración, la Oficial Examinadora dispuso que las propuestas debían ser presentadas nuevamente como solicitudes de CNC para hospital sujeto al trámite ordinario dispuesto en el Artículo V del Reglamento 112. En consecuencia, desestimó sin perjuicio las propuestas. Para ello, conforme dispuesto en el Reglamento Núm. 5467, no se requiere la celebración de una vista.

En fin, el Auxilio Mutuo no ha ofrecido evidencia o alegación alguna que destruya la presunción de regularidad de la determinación del Departamento de Salud.

## VI

Por los fundamentos que anteceden, se confirma la resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones

### ESCOLIOS 2006 DTA 107

**1.** Ambas solicitudes fueron consolidadas para fines de evaluación.

**2.** Dicha sección define *"organización para el mantenimiento de la salud"* de la siguiente manera:

*"Organización pública o privada que cumple con los requisitos de la Sección 1310(d) de la Ley de Salud Pública Federal 93-222, según enmendada, o que:*

*(1) Provee u ofrece servicios de salud a los participantes, incluyendo servicios básicos de salud tales como servicios médicos rutinarios, servicios de hospitalización, laboratorio, radiología, emergencias y servicios preventivos, y que además cubre estos servicios fuera del área de servicio de la organización.*

*(2) Ofrece estos servicios a base de cuotas pagadas periódicamente sin tomar en consideración la fecha en que se prestan los servicios, y que dicha cuota se fija sin considerar la frecuencia, la utilización o el tipo de servicio que se presta.*

*(3) Provee servicios médicos ofrecidos principalmente por médicos que son empleados o socios de la organización, o por médicos que ejercen la práctica privada individualmente o por médicos que ejercen grupalmente, mediante acuerdos."*

**3.** Página 6 del apéndice del recurso.

**4.** La referida ley define certificado de necesidad y conveniencia como un *"[d]ocumento emitido por el Secretario de Salud autorizando a una persona a llevar a cabo cualquiera de las actividades cubiertas por las secs. 334 a 334j de este título, certificando que la misma es necesaria para la población que va a servir y que no afectará indebidamente los servicios existentes, contribuyendo así al desarrollo ordenado y adecuado de los servicios de salud en Puerto Rico."* 24 L. P.R.A. sec. 334, inciso (e).

**5.** Los criterios para expedir o denegar un CNC se encuentran en el Art. 3 de la referida Ley 2, 24 L.P.R.A. 334b.